UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

THOMAS J. GANT,

                Petitioner,                **DECISION AND ORDER**
     -vs-                                            No. 04-CV-6175

GLENN S. GOORD,

                Respondent.
_____

## INTRODUCTION

Petitioner, Thomas J. Gant ("Gant"), filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in New York State Supreme Court (Erie Count) on charges of second degree murder and second degree criminal possession of a weapon. The parties have consented to disposition of this matter by the undersigned pursuant to 28 U.S.C. § 636(c).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

An Erie County Grand Jury returned an indictment on February 26, 1998, charging Gant with two counts of second degree murder (N.Y. Penal Law § 125.25(1), (2)) and one count of second degree criminal possession of a weapon (N.Y. Penal Law § 265.03). The indictment alleged that on January 5, 1998, in the City of Buffalo, Gant (a/k/a "J-Bird"), either with intent or under circumstances evincing a depraved indifference to human life, caused the death of Mikel A. Dickson ("Dickson"). The testimony at trial was that Dickson was killed by a bullet wound to the back. Three eyewitnesses (Antwonn Phillips, Keith Lyons and Henry Wright) identified Gant as the shooter and testified at trial.

The jury returned a verdict convicting Gant of intentional murder and criminal possession of a weapon. He was sentenced on November 30, 1998, to twenty-five years to life in prison. The Appellate Division, Fourth Department, of New York State Supreme Court unanimously affirmed the conviction on February 1, 2002. *People v. Gant*, 291 A.D.2d 912, 736 N.Y.S.2d 820 (App. Div. 4th Dept. 2002). The New York Court of Appeals denied leave to appeal on June 17, 2002. *People v. Gant*, 98 N.Y.2d 675, 774 N.E.2d 229, 746 N.Y.S.2d 464 (N.Y. 2002). Gant filed a motion to vacate the judgment pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10 on September 16, 2003, raising a claim pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), which appellate counsel already had raised on direct appeal. The motion which was denied by the trial court January 22, 2004. *See* Exhibit D to Respondent's Appendix of Exhibits. The Appellate Division denied leave to appeal on April 8, 2004. *See id.*

Gant filed the instant habeas petition on April 15, 2004. *See* Docket #1. Respondent answered the petition and interposed the defense of untimeliness, and Gant submitted a traverse (reply pleading). For the reasons set forth below, Gant's petition is dismissed as untimely.

## DISCUSSION

**I.      Timeliness of the Petition**

    **A.      Statute of Limitations Under AEDPA**

One of the changes wrought by AEDPA[1] is the imposition of a one-year limitations period on habeas petitions which begins to run from the latest of several events, one of which is the date on which the challenged state court judgment becomes final. *See* 28 U.S.C. § 2244(d)(1); *Bennett v. Artuz*, 199 F.3d 116, 118 (2d Cir. 1999), *aff'd,* 531 U.S. 4 (2000). In this

---

[1] Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996).

case, as in most cases, the one-year period runs from the date the state conviction becomes final. 28 U.S.C. § 2244(d)(1)(A). The state conviction becomes final for AEDPA purposes when the petitioner's time to seek direct review in the United States Supreme Court by writ of *certiorari* expires. *Williams v. Artuz,* 237 F.3d 147, 151 (2d Cir. 2001). Here, that period expired 90 days after the New York Court of Appeals denied leave to appeal. *Pratt v. Greiner*, 306 F.3d 1190, 1195 n. 1 (2d Cir. 2002). Therefore, Gant's judgment of conviction became final on September 15, 2002, (not September 17, 2002, as petitioner asserts), which was 90 consecutive chronological days from June 17, 2002, which is when the New York Court of Appeals denied leave to appeal the Appellate Division's affirmance of Gant's conviction. Gant's one-year limitations period thus would have expired one year later, on September 15, 2003.

AEDPA provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation." 28 U.S.C. § 2244(d)(2); *Bennett*, 199 F.3d at 119. In the *Bennett* case, the Second Circuit joined the majority of circuit courts in holding that the tolling provision of § 2244(d)(2) applies to petitions challenging pre-AEDPA convictions. *See Bennett*, 199 F.3d at 119 (noting that to hold otherwise would effectively discourage appellants from starting and completing the state court review process). The Second Circuit went on to announce that a state court application or motion for collateral relief is "'pending' from the time it is first filed until finally disposed of and further appellate review is unavailable under the particular state's procedures." *Bennett*, 199 F.3d at 120; *see also Carey v. Saffold*, 536 U.S. 214, 217, 220-21 (2002).

Here, Gant filed his first and only state court motion for collateral relief on September

16, 2003, one day after the limitations period expired on September 15, 2003. Thus, the one-year limitations period ran ~~out~~ before Gant could gain the benefit of § 2244(d)(2)'s tolling occasioned by the filing of his C.P.L. § 440.10 motion. Gant's habeas corpus petition, which was not filed until April 15, 2004, is clearly untimely.

Even assuming, for the sake of argument, that Gant was correct that his conviction became final on September 17, 2002, and that the statute of limitations expired on September 17, 2003, the petition still would be untimely. In that case, the C.P.L. § 440.10 motion filed on September 16, 2003, was filed one day before the statute of limitations would have run ~~out~~. The statute of limitations would have been tolled from September 16, 2003, until April 8, 2004, when the Appellate Division denied leave to appeal the trial court's denial of the C.P.L. § 440.10 motion. In order to have been timely, Gant would have had to have filed his petition on April 9, 2004, since he only had one day left on the clock. However, he did not file his petition until April 15, 2004. Thus, even accepting Gant's timetable as correct, the petition is still untimely.

### B.     Equitable Relief

Because AEDPA's one-year period has been construed as a statute of limitations rather than a jurisdictional bar, courts may equitably toll the period. *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000). Equitable tolling applies only in the "rare and exceptional circumstance." *Id.* (citation omitted).  In order to justify equitable tolling of the one-year period of limitations, the petitioner must show that "extraordinary circumstances" prevented him from filing his petition on time.  *See id.* (citing *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996) (noting that the Second Circuit has applied equitable tolling doctrine "'as a matter of fairness' where a plaintiff has been 'prevented in some extraordinary way from exercising his rights . . . .' ") (citation

omitted)). Furthermore, the petitioner seeking equitable tolling must have acted with "reasonable diligence" throughout the period he seeks to toll. *See id.* The petitioner must demonstrate a causal relationship "between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000); *Hizbullahankhamon v. Walker*, 255 F.3d 65, 76 (2d Cir. 2001).

In general, the difficulties attendant on prison life, such as transfers between facilities, solitary confinement, lockdowns, restricted access to the law library, and an inability to secure court documents, do not by themselves qualify as extraordinary circumstances. *Amante v. Walker*, 268 F. Supp.2d 154, 158 (E.D.N.Y. 2003) (citing *Lindo v. Lefever*, 193 F. Supp.2d 659, 663 (E.D.N.Y. 2002)); *see also Anderson v. O'Gara*, 2002 WL 1633917, at *4 (S.D.N.Y. July 23, 2002) (lack of notice of denial of *coram nobis* petition is not "extraordinary" because, "[i]n the absence of some specific legal requirement or promise, there is nothing unusual about a court issuing a decision and a litigant not receiving a copy of it in the mail"). Moreover, simple ignorance of the applicable rules does not excuse a petitioner's failure to file a timely petition. *See Plowden v. Romine*, 78 F. Supp.2d 115, 120 (E.D.N.Y. 1999) ("There is no limiting principle to [petitioner's] argument that simple ignorance—absent any showing of diligence on his part or allegations of impediments to his staying informed about this case—should provide a basis for equitable tolling; to hold that the statute of limitations should be extended in this case would allow the statute to be extended indefinitely.").

Here, Gant has not alleged that "extraordinary circumstances" prevented him from filing

his habeas petition on time, and no such circumstances are apparent on the record before the Court. Thus, the Court cannot find that Gant is entitled to equitable tolling.

## CONCLUSION

For the reasons stated above, petitioner Thomas J. Gant's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is dismissed as untimely. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253.

**IT IS SO ORDERED**

/s/ *Victor E. Bianchini*
_____
VICTOR E. BIANCHINI
United States Magistrate Judge

DATED: May 08, 2006
Rochester, New York.